IRAKLI KARBELASHVILI, Esq. (SBN 302971)
ALLACCESS LAW GROUP
2096 Walsh Ave, Ste C1
Santa Clara, CA 95050
Telephone: (408) 295-0137
Fax: (408) 295-0142
irakli@allaccesslawgroup.com

Attorneys for Plaintiff JAMES ALGER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES ALGER,<br><br>Plaintiff,<br>v.<br><br>PATRICK J. MEYERS, an individual; KATHLEEN S. MEYERS, an individual; SAM ACOSTA, an individual dba BONITA ANTIQUES; and KATHLEEN ACOSTA, an individual dba BONITA ANTIQUES,<br>Defendants. | **Case No.** 26-cv-12175<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

Plaintiff JAMES ALGER ("Plaintiff" or "Mr. Alger") alleges as follows against Defendants PATRICK J. MEYERS, KATHLEEN S. MEYERS, SAM ACOSTA, and KATHLEEN ACOSTA (collectively, "Defendants"):

## INTRODUCTION

1. On October 1, 2026, Mr. Alger, who has progressive peripheral neuropathy and moves about in a wheelchair or mobility scooter, went into Bonita Antiques, an antique store at 157 W Bonita Ave in San Dimas, California (the "Store"). He had trouble from the moment he tried to come through the front: the main aisle leading into the Store was barely wide enough to let him in. Once inside, he found a sales floor so crowded that its aisles, some as narrow as 18 inches, gave him no room to travel, no room to turn around, and no way to reach the large display of Christmas merchandise he wanted to look at. Loose carpeting and uneven walking surfaces made matters worse.

2. These are not the kind of barriers that require major construction to fix. They come mostly from how the Store's floor is laid out and maintained: how close together its displays and furniture are placed, whether its rugs are secured, and whether any part of its counter sits at a height a seated customer can use. Federal law has required businesses like this one to remove barriers of this sort, wherever doing so is readily achievable.

3. Mr. Alger brings this action under Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12181 *et seq.*, to obtain an injunction requiring Defendants to make the Store accessible, and a declaration that the Store's current conditions violate federal law.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction over this action under 28 U.S.C. § 1331 because Plaintiff's claim arises under the ADA, a federal civil rights statute.

5. Venue lies in the Central District of California because the Store and the real property on which it sits are located in San Dimas, in Los Angeles County, and all of the events and omissions giving rise to Plaintiff's claim occurred there.

## THE PARTIES

6. Plaintiff James Alger lives in Porter Ranch, California. He has progressive peripheral neuropathy, a condition in which damage to the nerves of the extremities causes profound and worsening weakness and numbness in his hands, arms, legs, and feet. His condition substantially limits major life activities, including walking and performing tasks that require fine motor control. He depends on a wheelchair or mobility scooter to get around. Because he is seated, his forward and side reach is limited. Mr. Alger is a person with a disability within the meaning of the ADA.

7. Defendant PATRICK J. MEYERS is an individual. On information and belief, he is, and at all relevant times was, an owner of the real property located at 157 W Bonita Ave, San Dimas, California 91773, Los Angeles County Assessor's Parcel No. 8387-011-031 (the "Property"), on which the Store operates.

8. Defendant KATHLEEN S. MEYERS is an individual. On information and belief, she is, and at all relevant times was, an owner of the Property together with Defendant Patrick J. Meyers. Patrick J. Meyers and Kathleen S. Meyers are referred to together as the "Owner Defendants."

9. On information and belief, the Owner Defendants lease the Property, or the portion of it occupied by the Store, to the operator of the Store, and they retain the right and ability to make, approve, or require changes to the premises.

10. Defendant SAM ACOSTA is an individual. On information and belief, he owns and operates Bonita Antiques, doing business under that name, and occupies the Store premises as the Owner Defendants' tenant.

11. Defendant KATHLEEN ACOSTA, also known as Kathleen Nora Acosta, is an individual. On information and belief, she owns and operates Bonita Antiques together with Defendant Sam Acosta, doing business under that name, and occupies the Store premises with him as the Owner Defendants' tenant. Sam

Acosta and Kathleen Acosta are referred to together as the "Operator Defendants."

12. As the operators of the Store, the Operator Defendants control the layout of the sales floor; the placement of merchandise, displays, furniture, and floor coverings; and the configuration of the checkout counter.

13. Title III makes it unlawful for "any person who owns, leases (or leases to), or operates a place of public accommodation" to discriminate on the basis of disability. 42 U.S.C. § 12182(a). Both the landlord and the tenant of a public accommodation are responsible for compliance, and neither can contract that obligation away as between themselves and a person with a disability. 28 C.F.R. § 36.201(b). Each Defendant is therefore responsible for the conditions alleged in this Complaint.

## FACTUAL ALLEGATIONS

### A. The Store

14. Bonita Antiques is a retail store that sells antiques, collectibles, home décor, and other used merchandise to the general public. It is located on W. Bonita Avenue in downtown San Dimas.

15. On information and belief, the Store has done business at the Property for well over a decade. A fictitious business name statement for "Bonita Antiques" was filed in 2006, and the Store currently holds a City of San Dimas business license that runs through March 31, 2027. On information and belief, the Store generates annual sales in excess of $1,000,000.

16. On information and belief, the building that houses the Store was constructed in or about 1914. Its age does not exempt it from the ADA. Owners and operators of existing facilities must remove architectural barriers where it is readily achievable to do so, 42 U.S.C. § 12182(b)(2)(A)(iv), and any alterations made after January 26, 1992 must be made accessible, 42 U.S.C. § 12183(a)(2).

17. Because it is a sales establishment open to the public, the Store is a

place of public accommodation under 42 U.S.C. § 12181(7)(E).

18. On information and belief, the Store's aisles are not defined by fixed walls. They are simply the spaces left over between movable furniture, shelving, display cases, and stacks of merchandise, and their width depends on where Defendants choose to place those items.

**B. Mr. Alger's Visit on October 1, 2026**

19. Mr. Alger has long enjoyed browsing antique stores and stops in at them when he has the chance. On October 1, 2026, he was in San Dimas to visit his son. The Store is close to his son's school, and Mr. Alger decided to go inside and see what it had to offer.

20. His difficulties began at the entrance. The main aisle leading into the Store was so narrow that Mr. Alger was barely able to fit his mobility device through it to get inside.

21. Conditions did not improve once he was in. Throughout the Store, the aisles were too narrow for his mobility device to travel through and there was no room to turnaround. Which meant that he could not simply change direction when a path proved impassable.





22. The floor itself presented further obstacles. Loose carpets lay along the route of travel, and the pathways were uneven. Loose rugs shift, bunch, and catch under the wheels of a wheelchair or scooter, and uneven surfaces make a mobility device harder to control. Together with the narrow aisles, these conditions made it hard for Mr. Alger to move through the Store at all.

23. Mr. Alger noticed that the Store had a large display of Christmas items, which was exactly the kind of merchandise he was looking for. Because of the narrow, crowded aisles, he could not get to that display or look at the items in it.

24. Nondisabled customers can walk through the Store, browse every display, carry their selections to the counter, and pay. Mr. Alger could do none of these things. His visit ended without his having seen most of the Store, without reaching the holiday merchandise that interested him, and without being able to buy anything.

**C. The Pre-Filing Investigation**

25. Before filing this action, and to satisfy their obligations under Federal Rule of Civil Procedure 11, Plaintiff's counsel retained an independent investigator to inspect and measure the Store. The investigator visited the Store and took measurements and photographs of the conditions inside. The investigation confirmed the barriers Mr. Alger encountered.

26. Specifically, the investigator measured the clear width of the Store's aisles at seven locations. The results were 18 inches, 19 inches, 20 inches, 20 inches, 21 inches, 25 inches, and 29 inches. An accessible route must have a clear width of at least 36 inches, narrowing to no less than 32 inches only for short segments no more than 24 inches long. Not one of the measured aisles meets even the 32-inch minimum, and the narrowest is half the required width.

27. The investigator also measured the Store's checkout counter at 38

inches high. Sales and service counters must include a portion no more than 36 inches above the floor. On information and belief, the Store provides no lowered portion of its counter and no other accessible transaction surface. Even had Mr. Alger found something to buy, he would have been denied equal access at the point of sale, because the checkout counter was too high for him to use as other customers could.

28. These barriers relate directly to Mr. Alger's disability. His wheelchair or scooter cannot pass through aisles that are far narrower than the width federal standards require, and because he is seated and has limited reach, he cannot effectively use a counter that rises above the maximum accessible height.

29. The other conditions Mr. Alger personally encountered, including the absence of any turning space and the loose carpeting and uneven surfaces along the route of travel, are likewise barriers to access.

30. Plaintiff alleges these barriers without prejudice to identifying additional barriers related to his disability after a full inspection of the Store by an accessibility expert.

**D. Deterrence and Intent to Return**

31. Mr. Alger wants to return to the Store. He enjoys shopping for antiques and collectibles, he continues to visit his son in San Dimas, and the Store is close to his son's school, so it is a place he will continue to pass by. The Christmas merchandise he was unable to reach is exactly the sort of item he would like to shop for there.

32. Mr. Alger now knows that the Store's aisles are too narrow for him, that its floor is not secure, and that its counter is too high. So long as those conditions remain, he is deterred from going back. The ADA does not require him to make a futile return visit to a facility he knows to be inaccessible. Once the barriers are removed, he will return to browse and make purchases on the same

terms as other customers.

**CLAIM FOR RELIEF**

**Violation of Title III of the Americans with Disabilities Act**

**(42 U.S.C. §§ 12181 *et seq.*)**

**(Against All Defendants)**

33. Plaintiff incorporates the allegations of paragraphs 1 through 32 as though fully set forth here.

34. Title III provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

35. The Store is a place of public accommodation, 42 U.S.C. § 12181(7)(E); Plaintiff is an individual with a disability, 42 U.S.C. § 12102; and Defendants own, lease, lease to, and/or operate the Store, 42 U.S.C. § 12182(a).

36. Prohibited discrimination includes a failure to remove architectural barriers in existing facilities where such removal is readily achievable, 42 U.S.C. § 12182(b)(2)(A)(iv); where removal is not readily achievable, a failure to make goods and services available through alternative methods that are readily achievable, *id.* § 12182(b)(2)(A)(v); and a failure to make reasonable modifications in policies, practices, or procedures when necessary to afford access, *id.* § 12182(b)(2)(A)(ii). Public accommodations must also maintain the features that make their facilities accessible. 28 C.F.R. § 36.211(a).

37. Defendants have discriminated against Plaintiff on the basis of his disability by, among other things:

a. failing to provide an accessible route of at least 36 inches in clear width into and through the Store's sales floor;

b. failing to provide adequate turning space for a wheelchair or scooter;

c. failing to provide stable, firm floor surfaces along the route of travel, including by leaving carpeting unsecured and walking surfaces uneven;

d. failing to provide a sales and service counter, or a portion of one, no more than 36 inches high;

e. failing to keep aisles and routes clear of merchandise, displays, and furniture, and otherwise failing to maintain accessible features; and

f. failing to adopt and enforce policies and practices, such as merchandising and floor-layout practices, that would keep the Store's goods and services accessible to customers who use wheelchairs and scooters.

38. Removing these barriers is readily achievable, meaning "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9). The Department of Justice's own regulations list "[r]earranging tables, chairs, vending machines, display racks, and other furniture" as an example of readily achievable barrier removal. 28 C.F.R. § 36.304(b)(4). Widening the Store's aisles is largely a matter of moving or thinning out movable displays and inventory. Loose rugs can be secured or removed at minimal cost. An accessible counter surface can be created by lowering a 36-inch section of the existing counter or adding an auxiliary counter at the proper height.

39. Defendants have the means to make these changes. On information and belief, the Store generates more than $1,000,000 in annual sales, and the Owner Defendants have owned the Property for nearly three decades, and the Operator Defendants have run the Store there for years. Defendants may also offset the cost of barrier removal through the disabled access tax credit and the barrier removal tax deduction available under 26 U.S.C. §§ 44 and 190. On information

and belief, Defendants have not taken advantage of either.

40. To the extent any barrier cannot be removed in a readily achievable manner, Defendants have failed to provide readily achievable alternatives.

41. On information and belief, to the extent Defendants have altered the Store or the Property since January 26, 1992, they failed to make the altered areas readily accessible to and usable by individuals with disabilities, in violation of 42 U.S.C. § 12183(a)(2).

42. Defendants' violations are continuing. The barriers described above remained in place when the investigator inspected the Store and, on information and belief, they remain in place today. Unless Defendants are ordered to remove them, Plaintiff will continue to be denied full and equal access to the Store.

43. Under 42 U.S.C. § 12188(a), Plaintiff is entitled to the remedies of 42 U.S.C. § 2000a-3(a), including injunctive relief. That relief "shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities." 42 U.S.C. § 12188(a)(2). Plaintiff is also entitled to recover his reasonable attorneys' fees, litigation expenses, and costs under 42 U.S.C. § 12205.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

## PRAYER FOR RELIEF

1. A declaration that Defendants have violated, and are violating, Title III of the ADA by maintaining the Store in a condition that denies persons with mobility disabilities full and equal access to its goods and services;

2. A permanent injunction under 42 U.S.C. § 12188(a)(2) ordering Defendants to bring the Store into compliance with Title III, including by:

a. providing and maintaining an accessible route of at least 36 inches in clear width into and throughout the Store's sales floor;

b. providing adequate wheelchair turning space;

c. securing or removing loose carpeting and correcting uneven surfaces along the route of travel;

d. providing an accessible portion of the sales and service counter no more than 36 inches high;

e. adopting and enforcing written policies that keep aisles and routes clear of merchandise, displays, and furniture, and training employees on those policies and on assisting customers with mobility disabilities; and

f. removing any additional barriers related to Plaintiff's disability that are identified during this litigation;

3. An order retaining jurisdiction over Defendants until the Court is satisfied that the barriers and practices described in this Complaint have been corrected and will not recur;

4. An award of reasonable attorneys' fees, litigation expenses, and costs under 42 U.S.C. § 12205; and

5. Such other and further relief as the Court deems just and proper.

Date: October 18, 2026

ALLACCESS LAW GROUP

*/s/ Irakli Karbelashvili*
By IRAKLI KARBELASHVILI, Esq.
Attorney for Plaintiff
JAMES ALGER